| Fill in this information to identify the case: | |
| --- | --- |
| Debtor name: Six Cooks, LLC. | √ Check if this is an |
| United States Bankruptcy Court for the:  EASTERN DISTRICT OF NORTH CAROLINA | amended filing |
| Case number:  25-03043-5-DMW | |

Official Form 425A

# Plan of Reorganization for Small Business under Chapter 11      12/19

## Six Cooks, LLC's First Amended Plan of Reorganization, Dated December 19, 2025

**Background for Cases Filed Under Subchapter V**

**A.  Description and History of the Debtor's Business**

The Debtor is a North Carolina limited liability company owned and operated by David K. Cook.  The Debtor operates an e-commerce retail distribution business using Amazon's selling platform.  The Debtor's business operations are based out of Morehead City, North Carolina, where its warehouse and primary place of business is located, at 137 Industrial Drive.  Prior to the filing of the petition, the Debtor operated in conjunction with several affiliated retail distribution companies with common ownership.  Each of these companies sold distinct varieties of goods on Amazon that were warehoused in the same building as the Debtor.  These affiliates include Industrial Puppy, LLC; Wild Baby, LLC; and Pro Nutrition Labs, LLC (the "Affiliated Entities").  The Debtor and the Affiliated entities were created to operate and manage different storefronts on Amazon.

On the Petition Date, the then-existing inventory of the affiliated companies was assumed by Six Cooks, LLC and their operations were consolidated under Six Cooks, LLC.  The Debtor created d/b/a's for each storefront.  From the Petition Date forward, the Debtor has operated these storefronts and has purchased all inventory for each storefront since the Petition Date.  The Debtor is recognizing the claims of creditors having secured claims against the Affiliated Companies as of the Petition Date equal to the value of their collateral assumed by the Debtor, valued as of the Petition Date.  The Associated Entities have ceased doing business.

Since the filing of the bankruptcy petition, the Debtor has been authorized to use cash collateral and has operated normally.  The Debtor has paid all expenses incurred in the ordinary course of its operations, including, but not limited to, wages and payroll taxes.

**B.  Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Liquidation Analysis is attached hereto as **Exhibit A.**  In a hypothetical Chapter 7 Bankruptcy, the unsecured creditors, as defined in the Plan Supplement, would receive nothing.

**C.  Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information in the form of a Feasibility Analysis as **Exhibit B.**

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $107,922.72 per year.

The final Plan payment is expected to be paid on June 1, 2031

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor:   Six Cooks, LLC                                                 Case Number: 25-03043-5-DMW

## Article 1:  Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of the Debtor from proceeds derived from ordinary business operations.

This Plan provides for:    One (1) class of priority unsecured claims;
        Two (2) classes of secured claims;
        One (1) class of non-priority unsecured claims;
        One (1) class of purported Merchant Cash Advance claims; and
        One (1) class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately Five  (5) cents on the dollar.  This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.  A Plan Supplement, attached hereto as **Exhibit C,** that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## Article 2:  Classifications of Claims and Interests

| | | |
|---|---|---|
| 2.01 | Class 1........... | All allowed Administrative Claims as allowed under §§ 503,506, and 507 of the Code, including:<br><br>Ayers & Haidt, P.A., Attorneys for the Debtor<br>Joseph Z. Frost, Esq., Subchapter V Trustee |
| 2.02 | Class 2........... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under Section 507(a)(8), including:<br><br>Internal Revenue Service |
| 2.03 | Class 3............ | The claim of the United States Small Business Administration ("SBA"). |
| 2.04 | Class 4............ | The secured portion of the claim of Columbia Bank. |
| 2.05 | Class 5............ | The claim of Lendistry SBLC, LLC ("Lendistry"), which is rendered unsecured by lack of equity after accounting for the first-priority security interest of the SBA. |
| 2.06 | Class 6........... | All non-priority unsecured claims allowed under § 506 of the Code. |
| 2.07 | Class 7.......... | Merchant Credit Advance Claimants, including Parafin. |
| 2.08 | Class 8.......... | Equity Security Holders. |

## Article 3:  Treatment of Administrative Expense Claims, Priority Claims Less than $1000, Statutory Fees and Quarterly Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority Claims** | Each holder of a priority tax claim holding a claim of less than $1,000 will be paid in full on the effective date of the Plan.  Each holder of a priority tax claim equal to or greater than $1,000 shall receive payment in full on or before the Effective Date. |

Debtor:   Six Cooks, LLC                                    Case Number: 25-03043-5-DMW

| | | |
|---|---|---|
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective Quarterly Fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

### Article 4:  Treatment of Claims and Interests Under the Plan

4.01    **Claims and Interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class I – **Administrative Claims** | ☐ Impaired<br>✓ Unimpaired | See attached Supplement to Plan |
| Class II – **Priority Unsecured Claims** | ☐ Impaired<br>✓ Unimpaired | See attached Supplement to Plan |
| Class III – **Secured claim of SBA** | ☐ Impaired<br>✓ Unimpaired | See attached Supplement to Plan |
| Class IV – **Secured claim of Columbia Bank** | ✓ Impaired<br>☐ Unimpaired | See attached Supplement to Plan |
| Class V – **Unsecured claim of Lendistry** | ✓ Impaired<br>☐ Unimpaired | See attached Supplement to Plan |
| Class VI – **General Unsecured Claims** | ✓ Impaired<br>☐ Unimpaired | See attached Supplement to Plan |
| Class VII – **Merchant Credit Advance Claimants** | ✓ Impaired<br>☐ Unimpaired | See attached Supplement to Plan |
| Class VIII – **Equity Security Holders of the Debtor** | ✓ Impaired<br>☐ Unimpaired | See attached Supplement to Plan |

### Article 5:  Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:<br><br>    (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>    (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed  claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>*See Article 6.02 of the the attached Plan Supplement.* |

Debtor:   Six Cooks, LLC                                        Case Number: 25-03043-5-DMW

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to Assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

Debtor anticipates that David K. Cook will continue to be the President and sole shareholder of the reorganized Debtor and that the Debtor will continue business operations as a going concern for the foreseeable future.

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and Rules of Construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | David Cook shall retain the position of President of the Debtor. |
| 8.08 | **Retention of Jurisdiction** | The Court shall retain jurisdiction of these proceedings under Sections 105(a) and 1193 for the following purposes: |

(i)     Determine any and all objections to the allowance of Claims and/or interests;

(ii)    Determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

(iii)   Determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

(iv)    Determine all controversies and disputes arising under or in connection with the Plan;

(v)     Determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date or permitted to be filed or commenced pursuant to this Plan;

(vi)    Hear and determine any and all claims or actions now pending or to be retained and authorized under this Plan; Effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the estate;

(vii)   Determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

Debtor:   Six Cooks, LLC                                    Case Number: 25-03043-5-DMW

(viii)     Determine all disputes regarding property of the Debtor, the Reorganized Debtor, or the estate;

(ix)      Establish and adjust procedures for the orderly administration of the estate;

(x)       Determine matters that are subject to proceedings duly removed to the Court; Interpret and enforce the Plan and to determine compliance with the terms of the confirmed Plan;

(xi)      Correct any defect or omission, or to reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and

(xii)     Modify this Plan after confirmation.

## Article 9:  Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)       Imposed by this Plan; or
(ii)      To the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from any debt:

(i)       On which the last payment is due after the first 3 years of the plan, of as otherwise provided in § 1192; or
(ii)      Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10:  Other Provisions

See attached Supplement to Plan of Reorganization, attached hereto as **Exhibit C.**

*Respectfully submitted,*

/s/ _____          David K. Cook, Member-Manager, Six Cooks, LLC
*Signature of the Plan Proponent*                  *[Printed name]*

/s/ David J. Haidt_____             David J. Haidt 22092
*Signature of the Attorney for the Plan Proponent*   *[Printed name]*

## EXHIBIT A LIQUIDATION ANALYSIS

| ASSETS | Title or Serial No. | Liquidation Value | 1st Lienholder | Lien AMT | Net Equity |
|---|---|---|---|---|---|
| **LIQUID ASSETS** | | | | | |
| | Cash on Hand | $ 10,367.35 | SBA | $ 952,605.30 | $ - |
| | Accounts Receivable | $ 13,196.30 | SBA | $ 952,605.30 | $ - |
| | Inventory - Six Cooks | $ 185,009.91 | SBA | $ 952,605.30 | $ - |
| | Inventory - IP | $ 112,942.92 | Coumbia Bank | $ 1,037,796.46 | $ - |
| | Inventory - PNL | $ 5,023.00 | | | $ 5,023.00 |
| | Inventory - Wild Baby | $ 6,027.50 | | | $ 6,027.50 |
| **TOTAL ASSETS** | | $ 332,566.97 | | $ 1,990,401.76 | $ 11,050.50 |
| **HYPOTHETICAL CH. 7 COSTS OF ADMINISTRATION** | | | | | |
| **PERSONAL PROPERTY** | | | | | |
| Chapter 7 Auctioneer Fees: | | | | | |
| 20% of first $20,000 | | | | | $ (2,210.10) |
| 10% of next $50,000 | | | | | $ - |
| 4% of balance | | | | | $ - |
| Chapter 7 Trustee Commissions: | | | | | |
| 25% of first $5,000 | | | | | $ (1,250.00) |
| 10% on next $5,001 to $50,000 | | | | | $ (605.05) |
| 5% on next $50,001 to $1,000,000 | | | | | $ - |
| 3% on $1,000,001 and above | | | | | $ - |
| Administrative Claims (estimated) | | | | | $ (50,000.00) |
| Priority Claims (estimated) | | | | | $ - |
| **TOTAL ESTIMATED COSTS OF LIQUIDATION/ADMINISTRATIVE EXPENSES** | | | | | $ (54,065.15) |
| **TOTAL AVAILABLE FOR UNSECURED CREDITORS** | | | | | $ - |

Exhibit B

## REVENUE AND EXPENSE PROJECTIONS/FEASIBILITY ANALYSIS

INCOME:

| | |
|---|---|
| Annual Gross Revenue – Retail Sales | $ 1,847,161.00 |
| Cash On-Hand | $ 10,000.00 |
| | |
| Estimated Total Funds Available | $1,857,161.00 |

EXPENSES:

Estimated Non-Debt Yearly Expenses:

| | |
|---|---|
| Payroll | $ 207,844.00 |
| Officer Salaries | $ 49,068.00 |
| Employer payroll taxes on salary | $ 19,654.00 |
| Rent | $ 48,000.00 |
| Amazon Expenses | $707,313.00 |
| Amazon Advertising | $33,071.00 |
| Brick and Mortar Exp. | $2,844.00 |
| Inventory Purchases | $562,900.00 |
| Legal Fees | $8,000.00 |
| Bookkeeping | $ 10,500.00 |
| Software | $12,564.00 |
| Office Supplies | $13,200.00 |
| Liability Insurance | $9,302.00 |
| Worker's Comp. Insurance | $2,025.00 |
| Inventory/Property Insurance | $5,211.00 |
| Misc. Repairs | $420.00 |
| State Property Taxes | $2,400.00 |
| Utilities | $19,044.00 |

Total Estimated Annual Operating Expenses 2025:     $ 1,713,360.00

Unsecured Priority Claims (Taxes)            $0

Small Business Administration (annualized) $60,912.00

Columbia Bank (annualized)          $26,414.28

Aggregate Annual Plan Payments                    $ 87,728.80

Annual Plan Payment (Class VI – General Unsecured Creditors)

| Creditor | Claim Amount |
|---|---|
| Alonso Pedrero | $15,000.00 |
| American Express [POC 9] | $15,337.11 |
| American Express [POC 10] | $3,797.33 |
| American Express [POC 11] | $512.45 |
| American Express [POC 12] | $9,131.51 |
| BayFirst National Bank | $135,729.00 |
| CapEc Inventory-Based Funding [POC 8] | $151,079.00 |
| Capital One Business | $2,941.12 |
| Chase [POC 3] | $27,266.08 |
| JP Morgan Chase [POC 2] | $45,014.03 |
| Uline [POC 1] | $132.01 |
| Estes Express Lines [POC 4] | $1,302.67 |
| Lendistry [POC 5] | $497,268.13 |
| Truist [POC 14] | $286,883.53 |
| Truist [POC 15] | $81,588.24 |
| Truist [POC 16] | $36,516.76 |
| US Bank [POC 6] | $12,160.35 |
| Monty Meister | $20,750.00 |
| Uncapped Ltd (Industrial Puppy) | $27,842.15 |

| | |
|---|---|
| Total Due to Class VI Creditors | $ 1,370,251.47 (estimated) |
| Projected Annual Plan Payments (Class VI commencing 2026) | $ 10,000.00 |
| **Projected Annual Operating Expenses and Annual Plan Payments (Classes II-XV)** | **($1,810,686.28)** |
| **Projected Annual Net Income** | **$46,474.72** |

Projected Unsecured Class Dividend: 3.65%

**Exhibit C**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

In the Matter of:
**SIX COOKS, LLC,**
Debtor.

Case No.:
**25-03043-5-DMW**
Chapter 11

## SUPPLEMENT TO FIRST AMENDED PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1191 of the Bankruptcy Code (11 U.S.C. § 1191), the Debtor hereby submits the following Supplement to its Plan of Reorganization:

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

A.      **Class I – Administrative Costs**

(1)     Classification: Class I consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of Professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| Ayers & Haidt, P.A. | Attorneys for Debtor | To be determined by the Court |
| Joseph Z. Frost, Esq. | Subchapter V Trustee | To be determined by the Court |
| | Accountant for Debtor | To be determined by the Court |

(2)     Impairment: This class will not be impaired.

(3)     Treatment: Administrative costs and expenses approved by the Court shall be paid in cash and in full, including accruals to date of payment, within ten (10) days of the Effective Date of this Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class I Allowed Claim.

In the event that funds are not available to pay such Administrative Costs and Expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full. Such claims remaining unpaid more than ten (10) days following the

Effective Date shall accrue interest at the rate of four percent (4%) per annum.

**NOTICE OF BAR DATE: All administrative claims, other than claims of a court approved professional, shall be filed no later than the first hearing date set for confirmation of the Plan.  Otherwise, such claims shall be waived and shall not be asserted against Debtor at any time.**

**B.      Class II - Priority Claims**

(1)      Classification:  Class II consists of allowed claims entitled to priority under Section 507(a) of the Code (except administrative expense claims under Section 507(a)(2)), and priority tax claims under Section 507(a)(8).

(2)      Impairment:  This class will be unimpaired.

(3)      Treatment:  Unsecured Priority Claims owed by the Debtor shall be paid through deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Priority Tax Claim, with interest on such amount from the Effective Date at the applicable statutory interest rate (9%).  Priority Claims shall be paid in equal quarterly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief.  Payments shall commence on the first day of the third full month following the Effective Date.  Priority Claims may be prepaid at any time without premium or penalty.

**C.      Class III – United States Small Business Administration:**

(1)      Classification:   Prior to the Petition Date, the Debtor executed a U.S. Small Business Administration Note (SBA Loan Number XXXX7909) ("Note") and Security Agreement on June 14, 2020, that was guaranteed by the United States Small Business Administration. Pursuant to the terms of the Promissory Note, the original sum of $150,000 was borrowed for use in the Debtor's business.  The interest rate was fixed at 3.75% per annum.  Debtor was required to make monthly installment payments of Seven Hundred and Thirty-One Dollars and No Cents ($731.00) per month. The original term was for thirty years.  The Note was amended on February 22, 2022 to increase the principal to Five Hundred Thousand Dollars and No Cents ($500,000.00) and the monthly payment increased to Two Thousand Three Hundred and Two Dollars and No Cents ($2,302.00).  The Note was amended again on March 7, 2022, to increase the principal amount to One Million Seventy-Six Thousand Dollars and No Cents ($1,076,000.00), which increased the monthly payment to Five Thousand Seventy-Six Dollars and No Cents ($5,076.00).  As security for repayment of the Promissory Note, Debtor granted the Small Business Administration a security interest via the Security Agreement covering equipment, inventory, accounts, instruments, chattel paper, general intangibles, furniture, machinery, and other assets as described more specifically in the Security Agreement.

The Small Business Administration filed a UCC-1 Financing Statement with the North Carolina Secretary of State properly describing the personal property covered by the Security Agreement on June 28, 2020, File No. 20200092224E, which gave it a perfected first-priority security interest in substantively all of the Debtor's assets. This UCC-1 was properly continued on June 9, 2025, File No. 20250081139B. As of the Petition Date, the Debtor owed the Small Business Administration $961,078.91.

The Small Business Administration is also secured by purported personal guaranty of the Debtor's principal, David Cook.

(2)    Impairment: This class will be impaired.

(3)    Treatment: The claim asserted by the Small Business Administration shall be treated as a fully secured claim and the original loan is hereby assumed. The Small Business Administration shall retain its liens on the collateral set out in the Security Agreement and other documents evidencing its security interests and liens existing on the Petition Date until its claim is paid in full.

Payment Terms: the Small Business Administration's original contract terms shall remain in full force and effect and the Debtor shall continue to make its monthly contractual payments of $2,538.00 pursuant to the Hardship Agreement through the end of 2025 and the regular installment payment of $5,076 in January 2026.

### D.    Class IV – Columbia Bank (f/k/a Umpqua Bank)

(1)    Classification: Prior to the Petition Date, the Associated Entity Industrial Puppy, LLC executed a U.S. Small Business Administration Note (SBA Loan Number XXXX4891-01) and Security Agreement with Umpqua Bank, now known as Columbia Bank, on April 18, 2023, that was guaranteed by the United States Small Business Administration. Pursuant to the terms of the Promissory Note, the sum of $1,200,300.00 was borrowed for use in Industrial Puppy's business. The interest rate was variable and indexed to the prime rate, as published in the Wall Street Journal, plus 2.75% to be adjusted quarterly, with an initial rate of 10.75%. Debtor was required to make monthly installment payments, with the initial payment amount being Sixteen Thousand Three Hundred and Sixty-Four Dollars and Seventy-Three Cents ($16,364.73) per month. The monthly installment payment was to be adjusted annually based upon prevailing interest rates to ensure the loan principal would amortize adequately over the loan term, which was ten (10) years, to provide for complete repayment. As security for repayment of the Promissory Note, Industrial Puppy granted Columbia Bank a security interest, via the Security Agreement, covering various personal property of the Debtor. The value of Columbia Bank's Collateral on the Petition Date was One Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents ($112,500.00). Columbia Bank has the first-priority lien in the inventory of Industrial Puppy, which was assumed by the Debtor as of the Petition Date. The Debtor also executed a corporate guaranty of this obligation, as did ENC Wealth Group, LLC, an affiliate of the Debtor that owns the warehouse in which the Debtor's business operations and assets are located.

3

Umpqua Bank filed a UCC-1 Financing Statement with the North Carolina Secretary of State properly describing the above property on April 6, 2023, File No. 20230044490K, which gave it a perfected first-priority security interest in the collateral described in the associated Security Agreement and UCC-1. Umpqua Bank changed its name to Columbia Bank effective September 1, 2025, after the Petition Date. As of the Petition Date, Industrial Puppy owed Columbia Bank $1,037,796.46.

Columbia Bank is also secured by purported personal guarantees of the Debtor's principal, David Cook, and his wife, Kirstin A. Cook, which also purports to be secured by the Guarantors' personal residence located at 104 Meadowbrook Cout in Cedar Point, Carteret County, North Carolina, as evidenced by the Deed of Trust recorded in File No. 1797307 and the Assignment of Rents recorded in File No. 179308, both Carteret County Registry. ENC Wealth Group, LLC, an affiliate of the Debtor that owns the warehouse in which the Debtor's operations are housed, as a corporate guarantor, also granted Columbia Bank a deed of trust and assignment of rents in the warehouse located at 137 Industrial Drive Morehead City, North Carolina 28557, recorded respectively in File Nos. 1797309 and 1797310, Carteret County Registry.

(2)   Impairment: This class will be impaired.

(3)   Treatment: The claim asserted by Columbia Bank shall be treated as a partially secured claim. Columbia Bank is partially secured based on the value of its collateral as of the Petition Date, which was assumed by the Debtor. The claim shall therefore be bifurcated into a secured claim in the amount of $112,500.00 ("Class IV Portion") and the remainder of its claim, $925,296.46, shall be treated as a Class VI General Unsecured Claim. Columbia Bank shall retain its liens on the collateral set out in the Security Agreement, and other documents evidencing Columbia Bank's security interests and liens existing on the Petition Date, in the collateral the Debtor assumed from Industrial Puppy until the secured portion of its claim is paid in full.

Payment Terms: Columbia Bank shall have a fully secured claim in the amount of $112,500, which shall accrue interest at the annual fixed rate of 6.5% from the Petition Date and shall be amortized over a period of five (5) years. The Class III Portion of the claim shall be paid in equal amortized monthly installment payments of principal and interest, with payments commencing on the first day of the first full month following the Effective Date. The estimated monthly payment amount is $2,201.19. The Class IV Portion may be prepaid at any time without premium or penalty.

Except as set forth herein, Columbia Bank's original contract terms shall remain in full force and effect.

Default and Cure: The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date. Upon the Debtor's failure to cure any delinquent payment, Columbia Bank shall be entitled to exercise such remedies permitted above or by law.

4

**E.**     **Class V – Lendistry SBLC, LLC**

(1)     <u>Classification</u>:  Prior to the Petition Date, the Debtor executed a U.S. Small Business Administration Note (SBA Loan Number XXXX9104) and Security Agreement with Lendistry SBLC, LLC ("Lendistry") on February 20, 2025, that was guaranteed by the United States Small Business Administration. Pursuant to the terms of the Promissory Note, the sum of Five Hundred Thousand Dollars ($500,000.00) was borrowed for use in the Debtor's business.  The interest rate was variable and indexed to the prime rate, as published in the Wall Street Journal, plus 3% to be adjusted quarterly, with an initial rate of 10.5%. Debtor was required to make amortized monthly installment payments, with the initial payment amount being Six Thousand Seven Hundred and Ninety-Nine Dollars and Forty-Six Cents ($6,799.46) per month. The monthly installment payment was to be adjusted annually based upon prevailing interest rates to ensure the loan principal would amortize adequately over the loan term, which was ten (10) years, to provide for complete repayment.  As security for repayment of the Promissory Note, the Debtor granted Lendistry a security interest via the Security Agreement covering equipment, inventory, accounts, instruments, chattel paper, general intangibles, furniture, machinery, and other personal property more specifically described therein.  Lendistry is rendered unsecured by virtue of its security interest being subordinate to that of the Small Business Administration, which encumbered the entirety of the Debtor's assets as of the Petition Date.

Lendistry filed a UCC-1 Financing Statement with the North Carolina Secretary of State properly describing the above property on February 20, 2025, File No. 20250020363E.  As of the Petition Date, the Debtor owed Lendistry $497,268.13.  [POC 5].

(2)     <u>Impairment</u>:  This class will be impaired.

(3)     <u>Treatment</u>:  As of the Petition Date, the claim asserted by Lendistry is rendered wholly unsecured by the first-priority lien of the Small Business Adinistration. The entirety of Lendistry's claim shall therefore be treated as a Class VI General Unsecured Claim.

**F.**     **Class VI – General Unsecured Claims**

(1)     <u>Classification</u>:  This class consists of the unsecured portion of Columbia Bank's Class IV Claim, Lendistry's Class V Claim, and all other Allowed Claims that are not Administrative Claims, Priority Claims, Secured Claims or Class VII Merchant Credit Advance Claims.

This Class also includes all claims which are not otherwise specifically classified by this Plan that existed as of the Petition Date.  The Claims shall include, but not be limited to, creditors whose Claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court or the terms of this Plan deems them to be unsecured in whole or part or to the extent that such Claim may not be specifically dealt with in the treatment of a particular class.  In determining whether a Claim, which is otherwise allowable, should be designated in this Class as opposed to any other Class in this Plan,

5

this Class is inclusive rather than exclusive.

(2)    Impairment:  This class will be impaired.

(3)    Treatment:  The Debtor shall pay creditors in this class cash payments totaling $50,000.00, payable in five (5) equal annual installments (the "Total Unsecured Dividend").    Payment shall be made through five (5) equal annual installments of $10,000.00 commencing on June 1, 2026, and continuing annually thereafter, with said amounts being distributed to the claimants in the Class *pro rata*.  The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date, such cure period to begin the second day of any month during which a payment is due and not paid and continuing for 30 days thereafter.

The Debtor may also investigate and pursue avoidance actions pursuant to §§ 547 and 548. Any funds collected through such actions, and preserved for the benefit of the Estate, shall be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

## G.    Class VII – Merchant Credit Advance Claimants

(1)    Classification:  This class consists of the following claims:

a.    **Parafin Capital**: The Debtor is informed and believes that as of the Petition Date, Parafin Capital ("Parafin") purports to assert a secured claim against the Debtor in the estimated amount of $105,426.37, originating from a Seller Capital Advance Agreement ("Agreement") dated February 16, 2024, pursuant to which Cashable purported to purchase 15% of the sales, purporting to be the estimated amount of $140,000.00, for 162,400.00. Under the terms of the Agreement, the Debtor was to remit 10% of its future receivables until such time as the Debtor had remitted a total of $162,400.  The Agreement specifically states that it is a "PURCHASE AND SALE OF FUTURE RECEIVABLES" and "The purchase of future receivables does not and shall not constitute a loan and seller agrees and acknowledges that you are not entering into a loan arrangement with Parafin." Furthermore, the Agreement states that "The sale of Future Receivables shall be, subject to the terms of this Agreement, absolute and irrevocable, providing Parafin with the full risks and benefits of ownership of such Future Receivables such that the amounts payable under such Future Receivables would not be property of Seller's estate in the event of Seller's bankruptcy."   Parafin has "no recourse to [Debtor] if any Future Receivable purchased by Parafin is not collected due solely to the occurrence of an event of assumed Credit Risk, as to any Future Receivables purchased by Parafin." A "Credit Risk" event includes risk caused by the Debtor's business slowing down and Debtor's business becoming insolvent.    Parafin expressly assumed the risk of Debtor's insolvency. Notwithstanding the plain language of the Agreement, the contract documents also included a "Security Agreement" purporting to encumber the Debtor's future receipts as "accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory" as defined in Article 9 of the Uniform Commercial Code.  Parafin also filed a UCC-1 Financing Statement in connection with this obligation on July 17, 2025, bearing

File No. 20250108401E.  As of the Petition Date, the Debtor's assets were entirely encumbered by the Small Business Administration's first-priority lien, as well as the liens of multiple other creditors with priority over Parafin.  Debtor intends to honor the language in the Agreement, which declares that it is not a loan and that Parafin has no recourse against Debtor in the event of insolvency.  Parafin therefore has no valid claim.

    (2)    <u>Impairment</u>:  This class will be impaired.

(3)    <u>Treatment</u>:  In accordance with the terms of the parties' pre-petition contracts and agreements, Claimants in this Class shall have and recover nothing from the Debtor and no payments shall be made in connection with Claimants' purported claims over the life of the Plan.  All contracts and agreements between the parties shall be rejected and declared void.

**H.**    **<u>Class VI – Equity Security Holders</u>**

(1)    <u>Classification</u>: This class consists of the holders of equity security interests in the Debtor as of the Petition Date.

(2)    <u>Impairment</u>:  This class will be impaired.

(3)    <u>Treatment</u>:  On the Effective Date all pre-petition equity security interests shall be deemed canceled and terminated.  The reorganized debtor shall issue new equity security interests to David Cook.

**I.**    **<u>Other Agreements</u>.**  Notwithstanding the foregoing, each holder of an Allowed Claim under Article 4 of the Plan may agree to less favorable treatment, in which case, such holder shall be paid in accordance with such agreed treatment.

## <u>ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

6.01.    <u>Assumption or Rejection of Executory Contracts and Leases</u>.  Any executory contracts or leases classified in the Schedule of Assumed Executory Contracts and Unexpired Leases, included below, shall be assumed or rejected in accordance with Article 6, unless assumed or rejected by a separate Order entered prior to the Confirmation Date or as stated in the terms of this Plan.  Any and all pre-petition contracts between the Debtor and Claimants designated as Class VII claimants are specifically rejected.

6.02.    <u>Schedule of Assumed Executory Contracts and Unexpired Leases.</u>  The Debtor is a party to the following executory contracts and unexpired leases:

a.    ENC Wealth Group, LLC – The lease for the warehouse located at 137 Industrial Drive Morehead City, North Carolina 28557 is hereby expressly assumed.

     b.       Amazon – The Amazon Services Business Solutions Agreements for Six Cooks, LLC d/b/a Blue Forest Market, Six Cooks d/b/a Industrial Puppy, LLC, Six Cooks, LLC d/b/a Wild Baby, and Six Cooks, LLC d/b/a Pro Nutrition Labs are hereby expressly assumed.

     c.       Swiss-Link, Inc. d/b/a Wavian USA – The Exclusive Distributorship Agreement between the Debtor and Wavian USA dated July 31, 2025, is hereby expressly assumed.

<u>Treatment:</u>  Any objection by a counterparty to the Debtor's assumption or rejection of an Executory Contract or Unexpired Lease or related Cure Claim must be filed, served, and actually received by the Debtor in accordance with the terms included in the referenced Motion or as otherwise stated herein. Any such objections will be scheduled to be heard by the Bankruptcy Court in accordance with the terms of the referenced Motion or as otherwise stated herein. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have assented to such assumption or Cure Claim as specified in the applicable Motion or as otherwise stated herein. To the extent any such dispute regarding the assumption of an Executory Contract or Unexpired Lease is not consensually resolved by the parties or otherwise resolved prior to the Effective Date, such assumption will be deemed to occur retroactively to the date of the Confirmation Hearing if approved by the Bankruptcy Court.

     6.03.   <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to § 365(b)(l) of the Bankruptcy Code, by payment of the Cure Amount in Cash within six (6) months of the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute between the Debtor and a counterparty to any Executory Contracts or Unexpired Leases that is not resolved between the parties regarding (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, shall be made following the entry of a Final Order resolving the dispute and approving the assumption, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of any one of the following: (1) amounts listed on the Debtors' Schedule of Assumed Executory Contracts and Unexpired Leases (if no objections to the Cure Claim is filed within the applicable objection period), (2) amounts agreed to by the Debtor and the applicable counterparty, or (3) amounts as ordered by the Court.

     6.04.   <u>Claims Based on Rejection of Executory Contracts and Unexpired Leases</u>. The Debtor has included a Schedule of Assumed Contracts in Subsection 6.02 above. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after

the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of such rejection; or (3) the Effective Date of the Plan. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Estate, or its property without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

## ARTICLE 7: ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    Acceptance by a Class of Creditors.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules, other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.    Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

    E.    <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (⅔) in amount and more than one-half (½) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

    F.    <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section XV herein, for confirmation pursuant to the Subchapter V "cramdown" provisions of §1191(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

    G.    <u>"Cramdown" for Impaired Creditors not accepting the plan.</u> In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponents of this Plan request the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request, if necessary, that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## ARTICLE 8:   GENERAL PROVISIONS

    8.01.   <u>Deficiency Claims</u>. Each secured creditor who receives the collateral securing their obligation shall have 90 days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. Such proof of claim shall include an itemization of the principal, interest, and other costs. Any such deficiency claim shall be treated in the unsecured creditor class. In the event the Debtor obtains their Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information.

    8.02.   <u>Distributions Pursuant to the Plan</u>. Distributions under the Plan shall be made as set forth in Article 4 above; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder

on a day other than a business day shall be made on the next succeeding business day. All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorney's fees, such creditor must file a fee application with the Court and such costs and attorney's fees must be approved by the Court prior to such costs and attorney's fees becoming part of the creditor's allowed claim.

8.03.    De Minimis Distributions.    No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

8.04.    Unclaimed Property.    If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and Debtor shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

8.05.    Preservation of Avoided Transactions for the Benefit of the Estate.    All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.

8.06.    Preservation of Right to Credit Bid.    All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser. In the event of a private sale that will not produce sufficient funds to satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor(s) with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms that that offered by the purchaser. In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid. Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (*i.e.* facsimile, electronic mail, or via telephonic communication).

8.07.    Required Documentation.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

8.08.    Prosecution of the Plan.    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

8.09.    Interest, Penalties, Late Charges, Attorneys' Fees, Costs, etc.    Except as expressly

stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, late charge, or similar charge or fee shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees, costs, or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

8.10.  Reservation of Debtor's Pre- and Post-Petition Claims. Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that they could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

8.11.  Administrative Claims. Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

8.12.  Objections to Claims and Adversary Proceedings. All objections to claims and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

8.13.  Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

8.14.  Sales Free and Clear of Liens. Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations. In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests. All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered. No further motion related to the sales of property shall be required; however, the Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

8.15.  Distribution of Sale Proceeds. Upon the sale of the real or personal property

proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of the sale remaining after payment of costs of sale and all reasonable and ordinary closing costs (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of the sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata. The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

8.16.    Claims Paid by Third Parties. To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

8.17.    Exemption from Stamp Tax or Transfer Tax. Pursuant to 11 U.S.C. § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

8.18.    Procedure for Payment of Professional Fees. Current Bankruptcy Court approved professionals shall not subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

8.19.    Employment of Officers. For the life of the Plan, the Debtor shall employ David Cook as President and Chief Executive Officer.

8.20.    Vesting of Property in the Debtor. In accordance with the provisions of 11 U.S.C. § 1181 and 11 U.S.C. § 1141(b), property of the bankruptcy estate shall vest in the Debtor upon confirmation of the Plan.

8.21.    Substantial Consummation. Within fourteen (14) days of substantial consummation of the Plan, as defined by § 1101(2), the Debtor shall file with the Court and serve upon the Trustee, the Bankruptcy Administrator, and all parties in interest notice of such substantial consummation in accordance with 11 U.S.C. § 1183(c)(2). Upon the filing of the notice of substantial consummation, the service of the Trustee shall terminate pursuant to 11 U.S.C. § 1183(c)(1) and the Trustee shall make a final report and file a final account of the administration of the estate within seven (7) days of the notice filed under § 1183(c)(2). Within thirty (30) days of substantial consummation, the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the

payments made for all costs of administration and each Class of creditors, and a motion for the entry of a Final Decree pursuant to Bankruptcy Rule 3022.

8.22.   Plan Injunction.   As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, however, that each holder of a contested claim or interest may continue to prosecute its proof of claim in accordance with the Plan and all holders of claims and interests shall be entitled to enforce their rights under the Plan.

[*Space Left Intentionally Blank*]
[*Signature Block on Following Page*]

Respectfully submitted, this the 19ᵗʰ day of December, 2025.

AYERS & HAIDT, P.A.

/s/ David J. Haidt
DAVID J. HAIDT
N.C. State Bar #22092
david@ayershaidt.com
JACK W. AYERS
N.C. State Bar #62240
jack@ayershaidt.com
Post Office Box 1544
New Bern, NC 28563
(252) 638-2955
(252) 638-3293 facsimile
*Attorneys for the Debtor*

DEBTOR:

/s/
By: David Cook, Member-Manager